**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>BOTTOM LINE RESULTS, INC.,<br><br>Debtor. | Case No. 16-12112 HRT<br>Chapter 7 |
| DAVID E. LEWIS,<br>Chapter 7 Trustee,<br><br>Plaintiff,<br>v.<br><br>THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., fka THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK, AS TRUSTEE FOR RESIDENTIAL FUNDING MORTGAGE SECUTIRIES I, INC., MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2004-SA1,<br><br>Defendant. | Adversary Proceeding No. |

**COMPLAINT**

Plaintiff DAVID E. LEWIS, Chapter 7 Trustee, by and through his counsel, Sender Wasserman Wadsworth, P.C., for his Complaint against Defendant The Bank of New York Mellon Trust Company, N.A., states and alleges as follows:

**JURISDICTION AND VENUE**

1. The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and (e).

2. This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (K).

3. Venue in this district is proper under 28 U.S.C. § 1409(a).

4. This adversary proceeding is commenced pursuant to Rule 7001(2) of the Federal Rules of Bankruptcy Procedure.

## GENERAL ALLEGATIONS

### Parties

5. Plaintiff David E. Lewis (the "Trustee") is the duly appointed chapter 7 trustee of the bankruptcy estate of Bottom Line Results, Inc. ("BLR"), Case No. 16-12112 HRT.

6. Defendant The Bank of New York Mellon Trust Company, N.A., fka The Bank of New York Trust Company, N.A. as Successor to JPMorgan Chase Bank, as Trustee for Residential Funding Mortgage Securities I, Inc., Mortgage Pass Through Certificates, Series 2004-SA1 ("BONY Mellon") is a nationally chartered financial institution with its headquarters located at 400 South Hope Street, Los Angeles, California 90071.

### Factual Background

*BLR's Operations*

7. BLR is a corporation organized under the laws of the state of Delaware which operated and conducted its business in the state of Colorado. Richard Roop ("Roop") was the president of BLR. BLR's primary business was the purchase and sale of real estate.

8. On March 11, 1996, BLR became licensed as a mortgage broker-dealer and Roop became licensed as a mortgage sales representative under the Colorado Securities Act, C.R.S. §§ 11-51-101, *et seq*. (the "Act").

9. On July 2, 2012, Gerald Rome, Securities Commissioner for the State of Colorado (the "Commissioner") summarily suspended the securities licenses of BLR and Roop. The Commissioner revoked the licenses of BLR and Roop effective December 18, 2012.

10. BLR obtained funding for its real estate business from individual investors through a "Private Lending Program."

11. Under the Private Lending Program, BLR sold promissory notes with interest rates between 8% and 10% and terms of 2 to 5 years.

12. The promissory notes sold by BLR were securities as defined in C.R.S. § 11-51-201(17).

13. The BLR promissory notes were not registered with the Colorado Division of Securities pursuant to C.R.S. § 11-51-301.

14. Investors received a deed of trust to secure their notes.

15. Real estate used to secure investor notes was generally held by self-settled land trusts created by BLR when a property was purchased by BLR. The land trusts were typically given the family name of the prior owner, to avoid triggering any due on sale clause or insurance defaults, with BLR named as the settlor and beneficiary and Roop named trustee. The land trusts issued the promissory note and deed of trust to the investor.

16. Typically, BLR would substitute the collateral securing the investor notes when the underlying property was conveyed or sold to third parties, or to address other unforeseen circumstances as issues arose. Most investor notes granted BLR the authority to unilaterally make such substitutions.

17. Investors were offered the election of receiving monthly interest payments or allowing interest to accrue until the maturity of the note. BLR failed to make timely interest payments due to investors on several occasions.

18. In connection with the offer and sale of BLR promissory notes, BLR did not inform investors in the Private Lending Program that BLR had on occasion failed to make timely payments due to investors.

19. When acquiring property from homeowners with outstanding mortgages, BLR often obtained the property by agreeing to pay the existing mortgage. In these transactions, BLR promised to pay the loan in accordance with its terms, but the original borrowers were not released and remained obligated to repay the loan.

20. On several occasions, BLR fell behind on mortgage payments.

21. In connection with the offer and sale of BLR promissory notes, BLR did not inform investors in the Private Lending Program that BLR had on occasion failed to make timely mortgage payments on properties for which BLR had agreed to pay existing mortgages.

22. In connection with the offer and sale of BLR promissory notes, BLR did not inform investors that a default judgment had been entered against it in the Sleeper Litigation for breach of a purchase and sale agreement.

23. Between 2008 and 2014, BLR raised more than $1.6 million through the Private Lending Program.

24. BLR's business operations were not profitable and failed to provide sufficient income to make the promised principal or interest payments to investors.

25. Instead, payments of principal and interest were made to investors using money obtained from later investors.

26. Investments with BLR included some or all of the following elements common to furtherance of a Ponzi scheme:

a. Investor "loans" to BLR were memorialized by short term notes with above-market interest rates;

b. Investor loans to BLR were often "rolled over" at maturity;

c. BLR and Roop, not the investors, controlled the use of the investment funds;

d. Investors' funds by and large were not used to fund legitimate business operations;

e. Instead, investor funds by and large were used by BLR to make payments of interest and principal to other investors, to pay Roop's personal expenses, and to fund his and his family's lifestyle; and

f. Investor funds were uniformly commingled.

*The Receivership Case*

27. On April 3, 2014, the Commissioner filed a Complaint for Injunctive and Other Relief against BLR and Roop in the District Court for the City and County of Denver (the "Receivership Court"), Case No. 2014 CV 31358 (the "Receivership Case").

28. On March 6, 2015, the Commissioner, BLR, and Roop entered into a Stipulation for Order of Permanent Injunction and Other Relief (the "Stipulation").

29. Pursuant to the Stipulation, BLR and Roop stipulated and agreed to the entry of an order appointing a receiver.

30. C. Randel Lewis was appointed Receiver in the Receivership Case on March 11, 2015.

31. The estate in the Receivership Case (the "Receivership Estate") initially consisted of, among other assets, thirty-eight (38) properties.

32. On October 22, 2015, the Commissioner filed a motion in the Receivership Case seeking to add seven (7) properties owned by BLR that were not initially included in the Receivership Estate.

33. The Commissioner's motion was granted on October 27, 2015 and the additional properties were added to the Receivership Estate (together with the initial 38 properties, the "Properties") *nunc pro tunc* March 23, 2015.

34. In its Order Adopting and Implementing Receiver's Recommendation, in Part (the "2016 Receivership Order") entered on January 11, 2016, the Receivership Court found that BLR and Roop engaged in "the classic Ponzi scheme strategy" of "not paying investors from business revenue, as expected, but instead engage[d] in the practice of using new investor money to pay prior investors, as well as using investor money for personal expenses and payments."

35. The Receivership Court further found that the family trusts were "sham trusts" designed "to take title to the properties as part of an intentional scheme to hinder and delay the original mortgage lenders."

36. With respect to the issue of title, the Receivership Court made the following findings in the 2016 Receivership Order:

> In order to remedy the Defendants' unregistered note scheme, however, the Receiver must be authorized to consolidate and settle title of record to the estate properties in the true beneficial owner, BLR. The Court is mindful of the potential rights and interests of third parties who have not intervened in this equity receivership, but enters this Order with the aim of preserving the best potential outcome for all parties affected by the Defendants' note scheme. In sum, it is an imperfect resolution to a vexing scenario yet it is the most equitable and appropriate under the circumstances for all parties affected by the Defendants' note scheme.

*Id.*

37. The Receivership Court then ordered the Receiver to "execute all appropriate documents to transfer and consolidate record title without warranty to all real properties identified by common address in Exhibit 1 ("Estate Properties") attached to this Order to Bottom Line Results, Inc." *Id.* In compliance with the 2016 Receivership Order, the Receiver transferred record title to all of the Properties except six to BLR prior to the bankruptcy filing.

*The Property at Issue*

38. One of the Estate Properties includes real estate commonly known as 227 Appian Way, Florissant, Colorado 80816 (the "Property").

39. Prior to October 11, 2006, the Property was owned by Ryan Minette ("Mr. Minette").

40. On May 19, 2004, a deed of trust was recorded against the Property, naming Homecomings Financial Network, Inc. as beneficiary. Said deed of trust was assigned to BONY Mellon and is referred to hereinafter as the "BONY Mellon Deed of Trust." The assignment was recorded with the Teller County Clerk and Recorder on June 13, 2016 at Reception No. 688893.

41. The BONY Mellon Deed of Trust was filed with the Teller County Clerk and Recorder on May 27, 2004 at Reception Number 566392. The BONY Mellon Deed of Trust purports to secure a promissory note in the original principal amount of $128,000.00.

42. On October 11, 2006, the Mr. Minette transferred the Property to the "Minette Family Trust" by Quitclaim Deed.

43. The Quitclaim Deed was recorded on March 27, 2007.

44. The trustee of the Minette Family Trust is Roop and BLR is the settlor and beneficiary of the trust.

45. The trust is a "sham trust" as found by the Receivership Court.

46. On January 3, 2014, a deed of trust was granted by the sham trust against the Property, naming Mr. Brauer as beneficiary (the "Brauer Deed of Trust"). The Brauer Deed of Trust was filed with the Teller County Clerk and Recorder on January 21, 2014 at Reception Number 669140. The Brauer Deed of Trust secures an alleged indebtedness in the principal amount of $45,000.00.

47. On June 15, 2015, Roop, acting as trustee of the Minette Family Trust (the then-record owner of the property), executed a deed in lieu of foreclosure (the "Deed in Lieu") in favor of Mr. Brauer. The Deed in Lieu was purportedly negotiated by Roop and Mr. Brauer as a result of a payment default on the obligation secured by the second deed of trust described above. The Deed in Lieu was recorded with the Teller County Clerk and Recorder on June 22, 2015 at Reception No. 680354. The Deed in Lieu was recorded without notice to the Receiver and, the Trustee asserts, in violation of the Receivership Case. Those disputes are the subject of an adversary proceeding pending between the Trustee and Mr. Brauer, Adv. Proc. No. 16-1329-HRT. However, the Trustee and Mr. Brauer have entered into a stipulation whereby the Trustee is authorized to sell the Property, pay the undisputed amount secured by the first deed of trust against the property, and escrow the remaining proceeds in a separate "Disputed Funds Account."

*The Bankruptcy Case*

48. In the 2016 Receivership Order, the Receivership Court authorized the Receiver to commence a chapter 7 bankruptcy case for BLR.

49. In his capacity as Receiver and pursuant to the Receivership Court's authorization, on March 10, 2016 (the "Petition Date"), the Receiver caused a voluntary petition for relief under chapter 7 to be filed with the United States Bankruptcy Court for the District of Colorado, Case No. 16-12112 HRT.

50. On or about January 12, 2017, the Trustee sold the Property pursuant to Court order. The Trustee is holding all net sale proceeds in the amount of $168,667.85, pending the outcome of the within adversary proceeding. Trustee will pay BONY Mellon the undisputed amounts due to it on the obligation secured by the BONY Mellon Deed of Trust as of March 10, 2015, the day before the Receiver was appointed. However, Trustee disputes that BONY Mellon is entitled to payment for obligations incurred after March 10, 2015, if any.

## CLAIM FOR RELIEF

**(Determination of Validity, Extent or Priority of Liens)**

51. The Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 50 above as though more fully set forth in this Claim for Relief.

52. The Trustee also seeks a declaration pursuant to Fed.R.Bankr.P. 7001(2) and (9) that the amount secured by the BONY Mellon Deed of Trust is limited to the amount owing as of March 10, 2015, the date of the Receiver's appointment.

53. During the Receivership case, the Receiver took the position that he lacked authority to make any payments to legitimate lenders, including BONY Mellon, without authorization from the Receivership Court. In effect, the appointment of the Receiver operated as a stay on all enforcement and payment activity with respect to the Properties included in the BLR scheme and lenders such as BONY Mellon should be precluded from obtaining a windfall resulting from the nonpayment cause by such stay at the expense of the many victims of the BLR scheme.

54. In the alternative, the Trustee seeks a declaration pursuant to Fed.R.Bankr.P. 7001(2) and (9) and 11 U.S.C. § 506(c) that all of the costs incurred by the bankruptcy estate in connection with the liquidation of the Property be surcharged against the amount claimed due by BONY Mellon in an amount to be proven at trial.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in his favor and against BONY Mellon as set forth in this Claim for Relief and grant such other and further relief this Court deems just and proper.

Dated this 1st day of March, 2017.

Respectfully submitted,

SENDER WASSERMAN WADSWORTH, P.C.

*_/s/ Aaron J. Conrardy_*
David V. Wadsworth, #32066
Aaron J. Conrardy, #40030
1660 Lincoln Street, Suite 2200
Denver, Colorado 80264
303-296-1999 / 303-296-7600 FAX
dwadsworth@sww-legal.com
aconrardy@sww-legal.com
Counsel for the Chapter 7 Trustee